**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **In re:**<br><br>**Maronda Homes, Inc.,**<br>**Maronda Homes, Inc. of Ohio**<br>**Maronda Homes of Cincinnati, LLC**<br><br>                         **Debtors.** | **Chapter 11**<br>**Case No. 11-22418-JKF**<br><br>**Jointly Administered** |

## DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION

Dated: August 12, 2011

**Manion McDonough & Lucas, P.C.**
Joseph F. McDonough, Esquire
James G. McLean, Esquire
600 Grant Street, Suite 1414
Pittsburgh, PA 15219
(412) 232-0200

# TABLE OF CONTENTS

Plan Introduction and Summary ........................................................................................1

    A.    Description of the Plan.....................................................................................1

    B.    Description of Releases.....................................................................................2

Article I:  Definitions; Rules of Interpretation; and Computation of Time ......................3

Article II:  Method of Classification of Claims and Interest; General Provisions............10

Article III:  Designation of Classes of Claim and Equity Interests...................................11

Article IV:  Unclassified Claims and Treatment of Unclassified Claims ..........................11

Article V:  Treatment of Classified Claims and Interests ................................................13

Article VI:  Conditions Precedent....................................................................................16

Article VII:  Means for Implementation ..........................................................................18

Article VIII:  Provisions Governing Distributions............................................................18

Article IX:  Executory Contracts and Leases ...................................................................19

Article X:  Disputed, Contingent and Unliquidated Claims and Interests........................20

Article XI:  Effects of Confirmation ................................................................................20

Article XII:  Retention of Jurisdiction .............................................................................23

Article XIII:  Miscellaneous Provisions ...........................................................................24

Article XIV:  Confirmation Request.................................................................................28

### A.     Description of the Plan

The Debtors jointly propose this Plan.  Reference is made to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, the Chapter 11 cases, summary and analysis of the Plan, and certain other related matters.  As explained in the Plan, the Secured Lenders (Class 1) and Equity (Class 5) classes are the only classes entitled to vote on the Plan, and those entitled to vote on the Plan should review the Disclosure Statement and the terms of the Plan before voting to accept or reject the Plan.  In addition, other agreements and documents that are referenced in the Plan and/or Disclosure Statement, including a Term Sheet dated June 30, 2011, have been made available to the Secured Lenders voting on the Plan.

PLEASE NOTE THAT THE PLAN PROVIDES FOR PAYMENT IN FULL OF THE ALLOWED CLAIMS OF ALL PRIORITY AND GENERAL UNSECURED CREDITORS, AND BECAUSE THOSE CLAIMS ARE UNIMPAIRED, HOLDERS OF THOSE CLAIMS DO NOT VOTE ON THE PLAN, DO NOT RECEIVE A BALLOT AND ARE ENTITLED TO RECEIVE (OR HAVE ALREADY RECEIVED) PAYMENT OF THEIR CLAIMS WITHOUT VOTING.

The Plan also provides for the payment in full of the allowed claims of the Secured Lenders,[2] but the Secured Lender Class is impaired because, *inter alia*, the timing of payment is extended from the maturity date of March 12, 2012 contained in the March 8, 2010 Pre-Petition Credit Agreement to September 30, 2014.  The Equity Class is also impaired because it is resolving claims for less than their fair value.  All other classes are unimpaired and therefore deemed by the Bankruptcy Code to accept the Plan.  As to the Secured Lenders Class, the Plan proposes to pay all principal, accrued but unpaid interest and pre-petition fees and expenses through the Petition Date (if not already paid) due to the Lenders under the Pre-Petition Credit Agreement but subject to an offset to the amounts due under the Pre-Petition Credit Agreement in the amount of $12 million (which is defined in Plan as the "Offset Amount").

The Equity Class is impaired because, under the Plan, equity holders retain their interests in the Debtors but Debtors do not recover or receive the full amount of damages incurred as a result of pre-petition events relating to the Secured Lenders.

The Plan allows and provides for the Debtors to emerge from bankruptcy and to continue to operate their businesses in a normal and customary fashion.  The Plan also provides for "exit financing" to provide the Debtors and their affiliates with the availability of funding required to operate their businesses going forward.  Specifically, the Plan includes a post-confirmation credit facility allowing Debtors and their co-borrowers to borrow up to the lesser of $128 million

---

[1]   This Plan Introduction and Summary is provided in compliance with Local Rule 3016-2.

[2]   The "Secured Lenders" are: Bank of America, N.A., Wells Fargo Bank, N.A., Wachovia Bank, National Association, PNC Bank, National Association, KeyBank National Association, Huntington National Bank, Fifth Third Bank, Regions Bank, BMO Capital Markets Financing, Inc., SunTrust Bank, N.A., Compass Bank (as successor to Guaranty Bank), Compass Bank, Comerica Bank, and U.S. Bank National Association.

(reduced quarterly beginning 2012) or the borrowing base availability based on the appraised value of their real property as set forth in a Term Sheet dated June 30, 2011 which has been negotiated with and supplied to all of the Secured Lenders. The terms of the exit financing are set forth in the Term Sheet dated June 30, 2011.

Under the Plan, each pre-petition Secured Lender is given the option to either elect to participate in the exit financing or not. It is a condition to the effectiveness and acceptance of the Plan by the Debtors that at least a majority in number and 75% in pre-petition amount loaned elect to participate in the exit financing. Secured Lenders that elect to not participate in the exit financing retain their pro rata interest in pre-petition collateral pledged as of the Petition Date, continue to receive their pro rata share of interest at the non-default rate and continue to receive net proceeds from sales of real estate in which the Secured Lenders had a perfected lien as of the Petition Date based on the value of the collateral as of the Effective Date of the Plan. All amounts not paid sooner are due to all of the Secured Lenders at maturity on September 30, 2014.

Lenders that elect to participate in the exit financing and commit to make advances under the terms of the exit financing will receive under the Plan a reaffirmation of perfected liens as of the Petition Date, a pledge of Debtors' property in Ohio and Pennsylvania in which Lenders did not have a perfected lien as of the Petition Date and a pledge of approximately $20-30 million of property in Florida. The pro rata share of loans advanced by each Secured Lender participating in exit financing will be adjusted upward to encompass the pro rata share of any Lenders that elect(s) to not participate in exit financing. As consideration for assuming an increased pro rata share of the commitment under the exit facility, for participating in the exit facility and for otherwise incurring the risks and obligations related to restructuring the Pre-Petition Credit Agreement, the pro rata share of the Offset Amount for each Secured Lender electing to participate in the exit financing will be reduced to zero. The Debtors and affiliated co-borrowers also agree to pay the reasonable fees and expenses of the Secured Lenders incurred after the Effective Date.

**B.**     **Description of Releases.**

The Plan provides for a resolution of all claims of the Secured Lenders against the Debtors and non-Debtor Borrowers under the Pre-Petition Credit Agreement and for the resolution of Debtors and non-Debtors' claims against the Secured Lenders for excess fees and expenses under the Pre-Petition Credit Agreement and for other losses and damages suffered by the borrowers. In accordance with the Plan, this resolution of claims and Offset Amount shall be approved and made effective as to all Secured Lenders per Section 10.01 of the Lenders' Pre-Petition Credit Agreement and by a vote of the Secured Lenders Class 1 to accept the Plan in accordance with the Bankruptcy Code, although the Secured Lenders do not by these actions or otherwise admit any liability or concede the validity of the Debtors' contentions or claims; all liability for which shall be deemed denied.

# ARTICLE I

## DEFINITIONS; RULES OF INTERPRETATION;
## AND COMPUTATION OF TIME

Section 1.01  **Definitions**.  Capitalized terms used herein shall have the following meanings:

"**Acceptance**" or "**Accept**" means acceptance of the Plan by a Class of holders of Claims or Interests pursuant to Bankruptcy Code Section 1126(c) or (d).

"**Administrative Agent**" means Bank of America, N.A. in it capacity as Administrative Agent under the Pre-Petition Credit Agreement.

"**Administrative Claims Bar Date**" means 5:00 p.m. (Eastern) on the date that is the first Business Day after the date that is twenty (20) days after the Effective Date.

"**Administrative Claim**" means a Claim against a Debtor for costs and expenses of administration under Bankruptcy Code Section 503(b) entitled to priority in payment under Bankruptcy Code Section 507(a), or under Bankruptcy Code Section 502(f), including but not limited to: (a) the actual and necessary costs and expenses incurred after the Petition Date for preserving the Estates and/or operating the Debtors' businesses; (b) cure costs associated with the assumption or assumption and assignment of executory contracts and unexpired leases pursuant to Bankruptcy Code Section 365; and (c) all fees and charges assessed against an Estate under Section 1930 of title 28 of the United States Code.  The term "Administrative Claim" herein shall exclude Fee Claims.

"**Allowed Claim**" or "**Allowed Interest**" means a Claim or Interest that is Allowed under the Plan and, therefore, is not subject to disallowance, defense, reduction, avoidance, setoff, or subordination of any kind.  The term "Allowed Claim" or "Allowed Interest" also means any Claim or Interest to the extent: (a) such Claim or Interest is scheduled by a Debtor pursuant to the Bankruptcy Code and Bankruptcy Rules in a liquidated amount and not listed as contingent, unliquidated, zero, undetermined or disputed; or (b) a proof of such Claim or Interest was timely filed, or deemed timely filed, with the Bankruptcy Court pursuant to the Bankruptcy Code, the Bankruptcy Rules and/or any applicable Final Order, or late filed with leave of the Bankruptcy Court; and, in either case, (i) is not objected to within the period fixed by the Bankruptcy Code, the Bankruptcy Rules and/or applicable orders of the Bankruptcy Court or (ii) has otherwise been allowed by a Final Order.  An "Allowed Claim" or "Allowed Interest": (y) includes a previously Disputed Claim or Interest to the extent such Disputed Claim or Interest becomes Allowed when the context so requires; and (z) shall be net of any valid setoff or recoupment amount based on a valid offset or recoupment right.  Except as otherwise expressly provided herein, the term "Allowed Claim" or "Allowed Interest" shall not, for the purposes of computation of distributions under the Plan, include (i) any non-compensatory penalties, fines, punitive damages, exemplary damages, multiple damages, treble damages or any other claims or obligations that do not compensate for actual losses incurred, or (ii) any other amounts not allowable under the Bankruptcy Code or applicable law.

"**Assets**" means (a) all assets and properties of every kind, nature, character and description (whether real, personal, or mixed, whether tangible and intangible (including contract rights), wherever situated and by whomever possessed), including the goodwill related thereto, operated, owned or leased by the Debtors that constitute property of the Estates within the purview of Bankruptcy Code Section 541, including without limitation and any all claims, Estate Causes of Action or rights of the Debtors under federal, state, or foreign law, letters of credit issued for or on behalf of the Debtors and the monies deposited to secured the performance of any contract or lease by the Debtors or any affiliate thereof; and (b) the proceeds, products, rents and profits of any of the foregoing.

"**Avoidance Actions**" means any claims, rights, defenses, or other Causes of Action arising under any Section of Chapter 5 of the Bankruptcy Code, including without limitation, Bankruptcy Code Sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553, or under similar or related state or federal statutes and common law, including state fraudulent transfer laws, whether or not prosecution of such actions has commenced as of the Confirmation Date or the Effective Date, and whether or not standing to bring such claims is held by the Debtors, any other representative of the Estates, any party-in-interest, or any other Entity or Person.

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101 - 1130, and as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Cases.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Western District of Pennsylvania, or such other court having jurisdiction over these Chapter 11 Cases or any proceeding within, or appeal of an order entered in, the Chapter 11 Cases.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms and the local rules and general orders of the Bankruptcy Court, and as each has been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Cases.

"**Borrowers**" means all borrowers under the Pre-Petition Credit Agreement and under the Exit Facility Agreement, including Debtors and their affiliated co-borrowers.

"**Business Day**" means any day, other than a Saturday, Sunday or a "legal holiday" (as such term is defined by Bankruptcy Rule 9006(a)).

"**Cash**" means money that is legal tender of the United States of America or the indubitable equivalent thereof.

"**Cash Collateral**" means all Cash or other money proceeds of any Lenders Collateral.

"**Causes of Action**" means any and all claims, rights, defenses, offsets, recoupments, actions in law or equity or otherwise, causes of action, choses in action, suits, damages, rights to legal or equitable remedies, judgments, third-party claims, counterclaims and cross-claims against any Entity or Person, whether arising under the Bankruptcy Code or federal, state, common, or other law, regardless of whether the subject of pending litigation or proceedings on

the Confirmation Date, the Effective Date, or thereafter, including but not limited to: (a) all Avoidance Actions; (b) all other claims in avoidance, recovery, subordination; and (c) all other actions described in the Disclosure Statement, the Schedules, and the Plan.

"**Chapter 11 Cases**" means the jointly administered Chapter 11 cases of the Debtors pending before the Bankruptcy Court and bearing case number 11-22418 (JKF).

"**Claim**" has the meaning ascribed to such term in Bankruptcy Code Section 101(5).

"**Claims/Interest Objection Deadline**" means the last day for filing objections to Claims, including but not limited to Administrative Claims, and Interests as provided in Article X of the Plan.

"**Class**" means a category of holders of Claims or Interests, as described in Article IV and V of this Plan.

"**Confirmation**" means confirmation of the Plan pursuant to the Bankruptcy Code Section 1129.

"**Confirmation Date**" means the date upon which the Confirmation Order is entered on the docket maintained by the Bankruptcy Court pursuant to Bankruptcy Rule 5003.

"**Confirmation Hearing**" means the hearing before the Bankruptcy Court at which the Plan is confirmed.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code Section 1129.

"**Creditor**" has the meaning ascribed to such term in Bankruptcy Code Section 101(10).

"**Debtor(s)**" means, Maronda Homes, Inc., Maronda Homes, Inc. of Ohio, and Maronda Homes of Cincinnati, LLC.

"**Disallowed**" means a Claim or Interest or any portion thereof that: (a) has been disallowed or expunged by a Final Order; (b) has been withdrawn, in whole or in part, by the holder thereof or by agreement with the Debtors, (c) is scheduled at zero or as contingent, disputed or unliquidated and as to which no proof of Claim has been filed by the applicable bar date or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order; or (d) is not scheduled in the Schedules and as to which no proof of Claim has been timely filed by the applicable bar date or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order.

"**Disclosure Statement**" means the Disclosure Statement with respect to the Plan, including any exhibits, appendices, schedules and annexes attached thereto, prepared and submitted pursuant to Bankruptcy Code Section 1125, as it may be altered, amended, supplemented or modified from time to time, and distributed in accordance with Bankruptcy Code Sections 1125 and 1126 and Bankruptcy Rule 3018.

"**Disputed Amount**" means an amount equal to the total of that portion (including, when appropriate, the whole) of a Claim or Interest that is a Disputed Claim or Disputed Interest.

"**Disputed Claim**" or "**Disputed Interest**" means any Claim or Interest (other than a Claim or Interest Allowed under the Plan) that: (a) is listed in the Schedules as disputed, contingent or unliquidated and for which a proof of Claim or Interest has been timely filed pursuant to the Plan, the Bankruptcy Code, or any Final Order; (b) is objected to in whole or in part on or before any applicable deadline or for which a request for estimation has been timely filed in accordance with the Plan, Bankruptcy Code, Bankruptcy Rules, or any Final Order and as to which no Final Order Allowing such Claim has been entered; or (c) is held by an Entity or Person that is adverse to any Estate in any litigation or contested matter pending or which the Debtors believe in good faith is reasonably likely to be asserted at the time of a distribution and as to which no Final Order resolving such litigation or contested matter has been entered. To the extent an objection relates to the Allowance of only part of a Claim or Interest, such Claim or Interest shall be a Disputed Claim or Disputed Interest only to the extent of the objection.

"**Distribution Address**" means: (a) the address indicated on any notice of appearance filed by an Entity or Person, or its/his authorized agent prior to the Effective Date; or (b) if no notice of appearance has been filed, the address indicated on a properly filed proof of Claim or Interest or, absent such a proof of Claim or Interest, the address set forth in the Schedules or register maintained for registered securities; provided, however, that any Entity or Person may, after the Effective Date, select an alternative Distribution Address by filing a notice with the Bankruptcy Court (copy served on the Debtors) identifying such alternative Distribution Address.

"**Distribution Date(s)**" means the date or dates on which the Debtors makes a distribution pursuant to this Plan.

"**Effective Date**" means: (a) if no stay of the Confirmation Order is in effect, the first Business Day after the date all of the conditions set forth in Section 6.02 of the Plan have been satisfied or waived in accordance with that Section, or such later date as may be reasonably agreed to by the Debtors; or (b) if a stay of the Confirmation Order is in effect, on the first Business Day (or such later day as may be reasonably agreed to by the Debtors) after the later of: (i) the date such stay is vacated; and (ii) the date each condition set forth in the Plan has been satisfied or waived as set forth in the Plan.

"**Entity**" has the meaning ascribed to such term in Bankruptcy Code Section 101(15) of the Bankruptcy Code.

"**Estate(s)**" means, in the singular, the Chapter 11 estate of each Debtor created by Bankruptcy Code Section 541 and, in the plural, the jointly administered Chapter 11 estates of all three Debtors.

"**Estate Causes of Action**" means all Causes of Action that belong to the Estates.

"**Estimation Order**" means a Final Order, which may be the Confirmation Order, estimating for voting, distribution or any other proper purposes under the Bankruptcy Code the

aggregate (and if applicable, individual) amount of any Claims, whether classified or unclassified under this Plan.

"**Exit Facility**" means the financing or financings for the Debtors (and other borrower affiliates) pursuant to the Exit Facility Agreement.

"**Exit Facility Agreement**" means that agreement or supplement or amendment to the Pre-Petition Credit Agreement enabling Exit Facility borrowings by Debtors (and other Borrower affiliates) in accordance with the Term Sheet and as summarized in Section 13.07.

"**Exit Facility Lenders**" means the Entities or Persons electing Option (B) under Section 5.01(c) and agreeing to provide the Exit Facility.

"**Exit Financing Commitment**" means the lesser of: (i) $128 million (as such amount is reduced from time to time in accordance with the Exit Facility Agreement); or (ii) the borrowing base availability set forth in the Exit Facility Agreement based on Borrowers' mortgaged real property valued at current appraisal.

"**Face Amount**" means the amount of any Claim as listed on a timely filed proof of Claim or the Schedules if no proof of Claim has been timely filed.

"**Fee Claim**" means a Claim of a professional person retained by order of the Bankruptcy Court for compensation and/or reimbursement of expenses pursuant to Bankruptcy Code Sections 327, 328, 330, or 331.

"**Fee Claims Bar Date**" means 5:00 p.m. (Eastern) on the date that is the first Business Day after the date that is sixty (60) days after the Effective Date.

"**Final Order**" means an order or judgment of the Bankruptcy Court (or other court with jurisdiction), as entered on the docket of the Bankruptcy Court (or other court with jurisdiction), that has not been reversed, stayed, modified or amended, and as to which: (a) the time to appeal or seek review has expired and no timely filed appeal or petition for review, rehearing, remand or certiorari is pending; or (b) any appeal taken or petition for review, rehearing, remand or certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, however, that the possibility that a motion under Bankruptcy Code Section 502(j), Rules 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other rules or law governing procedure in cases before the Bankruptcy Court, may be filed with respect to such order shall not cause such order not to be a Final Order.

"**General Claims Bar Date**" means August 17, 2011, the date set by the Bankruptcy Court as the last day for filing proofs of Claim in the Chapter 11 Cases, except for Administrative Claims, Fee Claims, and Claims asserted by Governmental Units.

"**General Unsecured Claim**" means a Claim that is not an Administrative Claim, a Priority Claim or a Secured Claim.

"**Governmental Unit**" has the meaning ascribed to such term in Bankruptcy Code Section 101(27).

"**Governmental Unit Claims Bar Date**" means October 17, 2011, the date set by the Bankruptcy Court as the last day for Governmental Units to file proofs of Claim in the Chapter 11 Cases.

"**Impaired**" has the meaning ascribed to such term in Bankruptcy Code Section 1124.

"**Insider**" has the meaning ascribed to such term in Bankruptcy Code Section 101(31).

"**Insider Claim**" means a Claim asserted by any Insider of a Debtor.

"**Insider Interest**" means an Interest asserted by any Insider of a Debtor.

"**Interest**" means any equity security, within the meaning of Bankruptcy Code Section 101(16), issued by a Debtor.

"**Lenders**" or "**Secured Lenders**" means, collectively, all Entities or Persons holding Claims for sums borrowed by the Debtors under the Pre-Petition Credit Agreement.

"**Lenders Claims**" means, collectively, the Lenders Claims under the Pre-Petition Credit Agreement in an aggregate amount not to exceed $89,770,348.51 plus interest and costs to the extent provided for herein.

"**Lenders Collateral**" means all Assets of the Estates subject to a perfected Lien of the Lenders under the Pre-Petition Credit Agreement.

"**Lien**" shall have the meaning ascribed to such term in Bankruptcy Code Section 101(37).

"**Lenders Pre-Petition Accrued Interest**" means, with respect to the Pre-Petition Credit Agreement, the amount of interest accrued but unpaid as of the Petition Date.

"**Offset Amount**" means $12 million.

"**Offset Claims**" means claims of Borrowers resolved in consideration of the Offset Amount.

"**Other Secured Claims**" means secured claims other than Secured Lender Claims.

"**Person**" has the meaning ascribed to such term in Bankruptcy Code Section 101(41).

"**Petition Date**" mean April 18, 2011.

"**Plan**" means this Joint Chapter 11 Plan of Reorganization, dated as of the date set forth on the first page hereof, together with any amendments or modifications hereto as the Debtors may file hereafter in accordance with the terms of the Plan.

"**Pre-Petition Credit Agreement**" means that certain Amended and Restated Credit Agreement among Maronda, Inc., certain of its subsidiaries, and the Lenders, dated as of March 8, 2010, and all related agreements, amendments and documents, including without limitation all security agreements and documents of perfection.

"**Priority Claims**" means, collectively, Priority Non-Tax Claims and Priority Tax Claims.

"**Priority Non-Tax Claim**" means a Claim or a portion of a Claim for which priority is asserted under Bankruptcy Code Sections 507(a)(3), (4), (5), (6) or (7).

"**Priority Tax Claim**" means a Claim or a portion of a Claim for which priority is asserted under Bankruptcy Code Section 507(a)(8).

"**Proponents**" means, collectively, the Debtors.

"**Rejection Claim**" means any Claim for amounts due as a result of the rejection of an executory contract or unexpired lease in accordance with Bankruptcy Code Section 365.

"**Schedules**" means, collectively, the (a) schedules of assets, liabilities and executory contracts and (b) statements of financial affairs, as each has been or may be amended and supplemented from time to time, filed by the Debtors pursuant to Bankruptcy Code Section 521.

"**Secured Claim**" means: (a) that portion of a Claim that is secured by a valid, perfected and enforceable security interest, Lien, mortgage or other encumbrance, in or upon any right, title or interest of any of the Debtors in and to property of the Estates, to the extent of the value of the holder's interest in such property as of the relevant determination date or (b) any Claim that is subject to an offset right pursuant to Bankruptcy Code Section 553, to the extent of the amount subject to a valid setoff, in the case of each of (a) and (b) as determined by the Bankruptcy Court pursuant to Bankruptcy Code Section 506(a).

"**Secured Lenders Pre-Petition Claims**" means the Claims belonging to the Lenders secured by the Lenders Collateral.

"**Tax**" or "**Taxes**" means all income, gross receipts, sales, use, transfer, payroll, employment, franchise, profits, property, excise or other similar taxes, estimated import duties, fees, stamp taxes and duties, value added taxes, assessments or charges of any kind whatsoever (whether payable directly or by withholding), together with any interest and any penalties, additions to tax or additional amounts imposed by any taxing authority of a Governmental Unit with respect thereto.

"**Tax Code**" means the United States Internal Revenue Code of 1986, as amended, modified or supplemented from time to time, and the rules and regulations promulgated thereunder.

"**Term Sheet**" means the Term Sheet dated June 30, 2011 executed by the Administrative Agent and the Borrowers that is in the possession of all Secured Lenders.

"**Unimpaired**" has the meaning ascribed to such term in Bankruptcy Code Section 1124.

"**Unsecured Claims**" means any Claim, arising prior to the Petition Date, that is not: (a) an Administrative Claim; (b) a Fee Claim; (c) a Priority Claim; or (c) a Secured Claim.

Section 1.02 **Rules of Interpretation**. For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter genders; (c) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (d) any reference in the Plan to an existing document or an exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (e) unless otherwise specified, all references in the Plan to articles, sections, clauses and exhibits are references to articles, sections, clauses and exhibits of or to the Plan; (f) the words "herein" and "hereto," and other words of similar import, refer to this Plan in its entirety rather than to a particular portion of the Plan; (g) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (h) any reference to an Entity or Person as a holder of a Claim or Interest includes that Entity or Person's successors, assigns and affiliates; (i) the rules of construction set forth in Bankruptcy Code Section 102 shall apply to the extent such rules are not inconsistent with any other provision in this Section; and (j) any term used herein that is not defined herein shall have the meaning ascribed thereto in the Bankruptcy Code and/or the Bankruptcy Rules, if used therein.

Section 1.03 **Computation of Time**. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II

## METHOD OF CLASSIFICATION OF
## CLAIMS AND INTERESTS; GENERAL PROVISIONS

Section 2.01 **General Rules of Classification**. A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class only to the extent that such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

Section 2.02 **Holder of Claims Entitled to Vote**. Each holder of an Allowed Claim and each holder of a Claim that has been temporarily allowed for voting purposes by order under Bankruptcy Rule 3018(a), which Claim is in an Impaired Class of Claims, shall be entitled to vote separately to accept or reject the Plan. Any Unimpaired Class of Claims shall be deemed to have accepted the Plan and are not required to vote.

Section 2.03 **Acceptances by Impaired Classes.** An Impaired Class of Claims shall have Accepted the Plan if all of the necessary conditions of the Bankruptcy Code and the Bankruptcy Rules have been satisfied.

Section 2.04 **Non-Consensual Confirmation**. To the extent necessary, the Debtors hereby request that the Bankruptcy Court confirm the Plan in accordance with Bankruptcy Code Section 1129(b). Subject to Bankruptcy Code Section 1127, the Debtors reserve the right to modify the Plan to the extent that confirmation pursuant to Bankruptcy Code Section 1129(b) requires modification, provided such modifications are consistent with Section 13.01 of the Plan.

Section 2.05 **Administrative Claims, Priority Tax Claims, and Fee Claims.** Administrative Claims, Priority Tax Claims, and Fee Claims have not been classified and are excluded from the Classes set forth in Article III in accordance with Bankruptcy Code Section 1123(a)(1).

## ARTICLE III

## DESIGNATION OF CLASSES OF
## CLAIMS AND EQUITY INTERESTS

Section 3.01 **Summary**. The classification of Claims and Interests for purposes of the Plan are as follows:

| **Class** | **Claim** | **Status** | **Voting Rights** |
|---|---|---|---|
| Class 1 | Secured Lenders Claims | Impaired | Entitled to Vote |
| Class 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote |
| Class 3 | Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote |
| Class 4 | General Unsecured Claims | Unimpaired | Not Entitled to Vote |
| Class 5 | Interests | Impaired | Entitled to Vote |

## ARTICLE IV

## UNCLASSIFIED CLAIMS AND TREATMENT OF UNCLASSIFIED CLAIMS

Section 4.01 **Administrative Claims**.

(a) **Administrative Claims Bar Date**. To be eligible to receive distributions under the Plan on account of an Administrative Claim that is not otherwise Allowed by the Plan, a

proof of Administrative Claim must be filed with the Bankruptcy Court so as to be received on or before the Administrative Claims Bar Date, or such other date as may be agreed to by the Debtors. Any holder of an Administrative Claim that does not assert such Claim in accordance with this Section 4.01(a) shall have its Claim be deemed Disallowed under this Plan and be forever barred from asserting such Claim against any of the Estates, the Debtors, or any of their Assets or property. Any such Claim shall be Disallowed and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim. A proof of Administrative Claim does not need to be filed in accordance with this Section 3.01(a) respecting any Administrative Claim incurred in the ordinary course of business by the Debtors after the Petition Date and before the Effective Date.

(b) **Treatment**. Subject to the terms herein, and unless the holder of an Allowed Administrative Claim agrees to receive other less favorable treatment, each holder of an Allowed Administrative Claim shall be paid 100% of the unpaid amount of such Claim in Cash on the date that is the later of (i) the Effective Date, (ii) the date that such Claims become payable in accordance with their terms; (iii) the date such Claims become Allowed Claims or otherwise become payable under the Plan, and (iv) as soon thereafter as is reasonably practicable; provided, however, that Allowed Administrative Claims of the United States Trustee for fees pursuant to Section 1930(a)(6) of title 28 of the United States Code shall be paid on the Effective Date (and thereafter, as such fees may thereafter accrue and be due and payable) in accordance with the applicable schedule for payment of such fees. The Debtors may satisfy, in the ordinary course of business, any Administrative Claim incurred in the ordinary course of business after the Petition Date and before the Effective Date.

Section 4.02 **Priority Tax Claims**.

(a) **Governmental Unit Claims Bar Date**. To be eligible to receive distributions under the Plan on account of a Priority Tax Claim, a Proof of Claim must be filed with the Bankruptcy Court so as to be received on or before the Governmental Unit Claims Bar Date, or such other date as may be agreed to by the Debtors. Any holder of a Priority Tax Claim that does not assert such Claim in accordance with this Section 4.02(a) shall have its Claim be deemed Disallowed under this Plan and be forever barred from asserting such Claim against any of the Estates, the Debtors, or any of their Assets or property. Any such Claim shall be Disallowed and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

(b) **Treatment**. Subject to the terms herein, and unless the holder of an Allowed Priority Tax Claim agrees to receive other less favorable treatment, each holder of an Allowed Priority Tax Claim shall be entitled to receive, at the option of the Debtors: (1) 100% of the unpaid amount of such Claim in Cash on the date that is the latest of (i) the Effective Date, (ii) the date such Claim becomes an Allowed Claim or otherwise becomes payable in accordance with its terms or under the Plan, and (iii) as soon thereafter as is reasonably practicable; or (2) deferred Cash payments in an aggregate principal amount equal to the amount of the Allowed Claim plus interest on the unpaid portion thereof at the rate of 6% per annum from the Effective Date through the date of payment thereof, which payments shall be made in equal annual installments through the date that is the fifth anniversary of the Petition Date. Any Claim or demand for penalty relating to any Priority Tax Claim (other than a penalty of the type specified

in Bankruptcy Code Section 507(a)(8)(G)) shall be Disallowed, and the holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Estates or any of their respecting Assets or property.

Section 4.03 **Fee Claims**.

(a) **Fee Claims Bar Date**. The only holder of a Fee Claim is Debtors' bankruptcy counsel as Debtors' counsel is the only professional retained by order of the Bankruptcy Court under Sections 327, 328, 330, 331 or otherwise, and no Person or Entity has a claim for substantial contribution under Section 503(b) of the Code or otherwise. All final applications for payment of Fee Claims shall be filed with the Bankruptcy Court and served on or before the Fee Claims Bar Date, or such other date as may be agreed to by the Debtors. Any holder of a Fee Claim that does not assert such Claim in accordance with this Section 4.03(a) shall have its Claim be deemed Disallowed under this Plan and be forever barred from asserting such Claim against any of the Estates, the Debtors, or any of their Assets or property. Any such Claim shall be Disallowed and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

(b) **Treatment**. Subject to the terms herein, and unless the holder of an Allowed Fee Claim agrees to receive other less favorable treatment, each holder of an Allowed Fee Claim shall be paid 100% of the unpaid amount of such Claim in Cash on the date, or as soon thereafter as is reasonably practicable, that such Claim is Allowed by Final Order (or by approval of the Bankruptcy Court, if such approval has not been stayed pending appeal) after the Effective Date.

## ARTICLE V

## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

Section 5.01 **Class 1: Secured Lenders Claims**.

(a) **Classification**. Class 1 shall consist of all Secured Lenders Claims. The Plan provides for payment in full of all principal, accrued but unpaid interest and the unpaid (if any) pre-petition fees and expenses of the Lenders due under the Pre-Petition Credit Agreement through the Petition Date less an offset of $12 million, but Class 1 is impaired because the Plan proposes modifications to the Pre-Petition Credit Agreement as set forth in Section 5.01(c) and, *inter alia*, extends the timing of payment from that contained in the existing Pre-Petition Credit Agreement. The Plan allows each Lender to elect whether it will participate in exit financing. As a condition to Debtors' acceptance of the Plan, at least a majority in number and 75% in amount due must elect to participate in the exit financing. The Lenders are entitled to vote on the Plan.

(b) **Allowance**. Subject to satisfaction of all conditions for confirmation of the Plan, and subject to the offset for the Offset Amount, the Secured Lenders Pre-Petition Secured Claims shall be deemed Allowed Claims in an aggregate amount equal to $89,770,348.51 plus accrued and unpaid interest after the Petition Date at the non-default rate under the Pre-Petition Credit Agreement and unpaid (if any) fees and expenses through the Petition Date.

(c)   **Treatment**.   Subject to the terms herein and unless a holder of an Allowed Lenders Secured Claim agrees to receive other less favorable treatment, such holder of an Allowed Claim in this Class shall elect either Option (A) or Option (B) below, such election to be made by ballot submitted prior to the hearing on confirmation of the Plan, and in order for the Plan to be effective and accepted by Debtors, a majority in number of the members of Class I and 75% in amount due must elect Option (B):

(A)   The holder elects to retain its pro rata amount of the Allowed Secured Lender Claim (the indebtedness owed under the Pre-Petition Credit Agreement as of the Petition Date plus accrued interest at the non-default rate less the holder's pro rata share of the Offset Amount) and retain its pro rata perfected interest in pre-petition collateral pledged by Debtors (and affiliated co-borrowers) under the Pre-Petition Credit Agreement as of the Petition Date, which indebtedness shall be repaid in accordance with the Pre-Petition Credit Agreement, as modified pursuant to this Plan (as set forth in the Term Sheet and summarized in Section 13.07(A) hereof) including payment of interest at the non-default rate set forth in the Pre-Petition Credit Agreement, and fees and expenses through the Petition Date.   In addition, the holder shall receive payment of the holder's share of net proceeds received by Debtors (and affiliated co-borrowers) from sale of collateral in which Lenders had a valid and perfected lien as of April 18, 2011 based on the value of the collateral as of the Effective Date in a percentage equal to such holder's pro rata share of the Commitment as defined under the Pre-Petition Credit Agreement as of the Petition Date; provided that the Borrower shall be entitled to an offset to amounts due to the holder for the holder's pro rata share (equal to its pro rata share of the Commitment under the Pre-Petition Credit Agreement as of the Petition Date) of the Offset Amount.

OR

(B)   The holder elects to agrees to participate in the Exit Facility to be provided to Debtors and affiliated co-borrowers under the Pre-Petition Credit Agreement, as supplemented pursuant to this Plan (as set forth in the Term Sheet and summarized in Section 13.07(B) hereof), in which event the holder will retain its pro rata amount of indebtedness owed under the Pre-Petition Credit Agreement as of the Petition Date plus interest at the non-default rate and the holder will have a pro rata participation of the Exit Financing Commitment (which will be equal to the holder's pro rata share of the Commitment under the Pre-Petition Credit Agreement as of the Petition Date plus its proportional share of that portion of the Commitment under the Pre-Petition Credit Agreement as of the Petition Date held by any Lenders electing Option A).   The holder shall retain its pro rata interest perfected in pre-petition collateral pledged by Debtors (and affiliated co-borrowers) under the Pre-Petition Credit Agreement as of the Petition Date, and will receive, on the Effective Date or as soon thereafter as reasonably practicable, a pledge of all of the Debtors' real property in Ohio and Pennsylvania that was not pledged to Secured Lenders as of the Petition Date and a pledge of up to $20-30 million (based on lower of cost, sales, price or appraisal value) of real property owned by one or more Borrowers in Florida, which indebtedness shall be repaid

and available for re-borrowing in accordance with the Exit Facility Agreement, as consummated pursuant to this Plan (and as described in the Term Sheet and summarized in Section 13.07(B) hereof).  In consideration of electing Option (B) and agreeing to participate in the Exit Facility,  for assuming an increased pro rata share of the Exit Financing Commitment and for assuming the risks and obligations related to the Exit Facility and restructuring the Pre-Petition Credit Agreement, the pro rata share of the Offset Amount for holders electing Option (B) will be reduced to zero.

Section 5.02 **Class 2: Other Secured Claims**.

(a) **Classification**.  Class 2 shall consist of all Other Secured Claims.  The only other Secured Claim is held by G. E. Commercial Finance Business Property Corporation ("G.E. Commercial") which has a claim against Debtor Maronda Homes, Inc. of Ohio.  Class 2 is unimpaired by the Plan and the holder of the Allowed Class 2 Claim is deemed to accept the Plan and therefore is not entitled to vote.

(b) **Treatment**.  Subject to the terms herein and unless the holder of the Allowed Other Secured Claim agrees to receive other less favorable treatment, such holder of the Allowed Claim in this Class shall receive in respect of such claim: (1) payment of all principal,  accrued interest and late fees through the Effective Date; (ii) reaffirmation of liens held by the creditor pre-petition; and (iii) resumption of all payments due under the G. E. Commercial credit documents as of the Effective Date.

Section 5.03 **Class 3:  Priority Non-Tax Claims**.

(a) **Classification**.  Class 3 shall consist of Allowed Claims entitled to priority under Bankruptcy Code Sections 507(a)(3), (4), (5), (6) or (7).  Class 3 Claims are unimpaired by the Plan and the Holders of Allowed Class 3 Claims are deemed to accept the Plan and therefore are not entitled to vote.

(b) **Treatment**.  Subject to the terms herein and unless the holder of an Allowed Priority Non-Tax Claim agrees to receive other less favorable treatment, each holder of an Allowed Priority Non-Tax Claim shall be paid 100% of the unpaid amount, if any, of such Claim in Cash on the date that is the later of (i) the Effective Date, (ii) the date such Claim becomes an Allowed Claim or otherwise becomes payable in accordance with its term or under the Plan, and (iii) as soon thereafter as is reasonably practicable.

Section 5.04 **Class 4: General Unsecured Claims**.

(a) **Classification**.  Class 4 shall consist of all General Unsecured Claims.  Class 4 is unimpaired by the Plan and all holders of Allowed Class 4 Claims are deemed to accept the Plan and are therefore not entitled to vote thereon.

(b) **Treatment**.  Subject to the terms herein, and unless the holder of an Allowed General Unsecured Claims agrees to receive other less favorable treatment, each holder of an Allowed General Unsecured Claim has either already received payment in full of its Allowed General Unsecured Claim or, if not, then will receive payment on the date that is the later of: (i)

the Effective Date; (ii) the date such Claim becomes an Allowed Claim or otherwise becomes payable in accordance with its terms; or (iii) as soon thereafter as reasonably practicable.

Section 5.05 **Class 5: Interests**.

(a) **Classification**. Class 5 shall consist of all Interests in the Debtors. The Interests of Debtor Maronda Homes of Cincinnati, LLC are held by Debtor Maronda Homes, Inc. of Ohio. The Interests of Debtors Maronda Homes, Inc. of Ohio and Maronda Homes, Inc. are held by Maronda, Inc., an entity owned entirely by a trust. All holders of Interests have participated in the formulation and negotiation of the Plan and have consented to the Plan. Class 5 are entitled to retain their Interests under the Plan but are impaired by the Plan to the extent the Plan compromises rights, interests, value and claims of the Debtors and solicitation of acceptances of the Plan with respect to holders of Claims in this Class 5 is required.

(b) **Treatment**. Each holder of an Allowed Interest shall be entitled to retain their ownership interest in the respective Debtor.

# ARTICLE VI

## CONDITIONS PRECEDENT

Section 6.01 **Conditions**. It is a condition to Debtors' acceptance of the Plan that at least a majority in number and 75% in amount due of holders of Claims in Class 1 elect Option (B) under Section 501(c). The following conditions are conditions precedent to Confirmation of the Plan, unless waived by the Debtors in accordance with the Plan: (i) the Plan is accepted by Lenders in Class 1 sufficient in number and in amount to satisfy the requirements of the Bankruptcy Code (which *ipso facto* will also constitute the Required Lenders under Section 10.01 of the Pre-Petition Credit Agreement); (ii) the Confirmation Order must be in a form and substance reasonably acceptable to Debtors; and (iii) the Confirmation Order shall:

(a) order, find and decree that the Confirmation Order supersedes any order of the Court issued prior to the Confirmation Date to the extent that such order is inconsistent with the Confirmation Order;

(b) provide that any transfers effected or mortgages or other security documents entered into or to be effected or entered into under the Plan, including but not limited to mortgages to be granted on property in Pennsylvania, Ohio or Florida, shall be and are exempt from any state, city, or other municipality transfer taxes, mortgage recording taxes, and any other stamp or similar taxes pursuant to Bankruptcy Code Section 1146(c);

(c) order, find, and decree that the Plan contains a settlement, compromise and resolution of complex matters, which meets the applicable standards for approval under Bankruptcy Code Section 1123 and Bankruptcy Rule 9019, and is approved in its entirety;

(d) approve in all respects the other transactions, agreements, releases and other documents to be effected pursuant to the Plan including but not limited to the modifications to the Pre-Petition Credit Agreement and release of the Offset Claims;

(e)     order, find, and decree that the Plan complies with all applicable provisions of the Bankruptcy Code, including that the Plan was proposed in good faith and that the Confirmation Order was not procured by fraud;

(f)     order, find, and decree that the provisions of Bankruptcy Code Sections 1145 and 1146(c) apply to the transactions contemplated hereunder, if applicable; and

(g)     order, find, and decree that the modifications to the Pre-Petition Credit Agreement and the Exit Facility is approved, and the Borrowers are authorized to enter into same and to consummate all transactions contemplated thereby including the recording of mortgages.

Section 6.02     **Conditions to the Effective Date**.    The Debtors reserve the right to request that the Confirmation Order include a finding by the Bankruptcy Court that, notwithstanding Bankruptcy Rule 3020(e), the Confirmation Order shall take effect immediately upon its entry and shall be a Final Order.  Notwithstanding the foregoing, the Plan may not be consummated, and the Effective Date shall not occur, unless and until each of the conditions set forth below is satisfied or waived (if and to the extent permitted by the Plan) by the Debtors, such waivers not to be withheld unreasonably:

(a)     the Confirmation Date shall have occurred and the Confirmation Order, in a form consistent with Section 6.01, shall have been signed by the judge presiding over the Chapter 11 Cases and shall have become a Final Order;

(b)     after the entry of the Confirmation Order, no modifications shall have been made to the Plan except in accordance with its provisions with respect to modification;

(c)     the conditions precedent to the confirmation of the Plan in Section 6.01 shall have been satisfied and shall continue to be satisfied; and

(d)     all actions, documents, and agreements necessary to implement the provisions of the Plan to be effectuated on or prior to the Effective Date, including but not limited to the Exit Facility, shall be reasonably satisfactory to the Debtors, and such actions, documents, and agreements shall have been effected or executed and delivered.  All documents contemplated by the Plan shall be completed and in final form and, as applicable, executed by the parties thereto and all conditions precedent contained in any of the foregoing shall have been satisfied or waived.

Section 6.03     **Waiver of Conditions**.    The waiver of any condition set forth in this Article VI may be made by the Debtors in accordance with the Plan without further notice or order of the Bankruptcy Court.  The failure to satisfy or waive a condition to the Effective Date may be asserted by any Debtor regardless of the circumstances giving rise to the failure of such condition to be satisfied (except for and expressly excluding any action or inaction by any Debtor).  The failure of the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each right shall be deemed an ongoing right that may be asserted at any time.

Section 6.04     **Effect of Nonoccurrence of the Conditions to the Effective Date**.    If each of the conditions to the occurrence of the Effective Date has not been satisfied or duly

waived in accordance with the Plan on or before the first Business Day that is more than thirty (30) days after the Confirmation Date, or such later date as shall be agreed to by the Debtors, any of the Debtors may schedule a status hearing with the Bankruptcy Court. If the Confirmation Order is ultimately vacated, the Plan shall be null and void in all respects, and nothing contained in the Plan shall constitute an admission, a waiver, or release of any Claims against or Interests in any of the Estates.

## ARTICLE VII

## MEANS FOR IMPLEMENTATION

Section 7.01   **Approval of Exit Financing**.  Entry of the Confirmation Order shall, to the extent necessary, authorize and approve, the modifications to the Pre-Petition Credit Agreement, the Exit Facility Agreement, the release of the Offset Claims, the termination of any Bankruptcy Court order then in effect authorizing use of cash collateral, and the transactions to be entered into, and actions to be taken thereunder, pursuant to the Bankruptcy Code.

## ARTICLE VIII

## PROVISIONS GOVERNING DISTRIBUTIONS

Section 8.01   **Distributions to Holders of Lenders Claims**

(a)   **Distributions Through the Lenders Distribution Agent** .  Distributions to holders of Secured Lenders Claims shall be made to the Lenders' Administrative Agent.

Section 8.02   **Provisions Concerning Disputed Claims Reserves**.

(a)   **Option to Establish Disputed Claims Reserves**.  In connection with making all distributions required to be made under the Plan, the Debtors shall have the option, in their discretion, to establish a separate Disputed Claim Reserve for Cash distributions pertaining to each Disputed Claim in each relevant Class, as necessary pursuant to the Plan and in an amount determined by the Debtors.

(b)   **Distributions**.  Payments on any Disputed Claim that becomes an Allowed Claim shall be distributed within thirty (30) days after the Claim is Allowed.  Distributions shall be made only to the extent of the aggregate distributions that the holder of any such Allowed Claim would have received had such Claim been Allowed as of the Effective Date.  Distributions to each holder of a Disputed Claim that has become an Allowed Claim (and to the extent that the holder of the Disputed Claim has not received prior distributions on account of that Claim) shall be made in accordance with the provisions of the Plan governing the Class  of Claims in which the Claim is classified.

Section 8.03   **Transmittal of Distributions and Notices**.  Any property or notice that an Entity or Person is or becomes entitled to receive pursuant to the Plan may be delivered by regular mail, postage prepaid, in an envelope addressed to that Entity or Person's Distribution Address.  Property distributed in accordance with this Section shall be deemed delivered to such Entity or Person regardless of whether such property is actually received by that Entity or

Person. A holder of a Claim or Interest may designate a different Distribution Address by notifying, after the Effective Date, the Debtors of that address in writing.

Section 8.04 **Setoffs**. The Debtors may, but shall not be required to, setoff against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made), any claims of any nature whatsoever that the Estates may have against the Claim holder, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claim it may have against such Claim holder. Holders of Allowed Claims retain whatever rights to setoff they are otherwise entitled to assert under Bankruptcy Code Section 553.

Section 8.05 **Withholding Taxes and Expenses of Distribution**. Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All holders of Claims or Interests shall be required to provide any information necessary to effect the withholding of such taxes. In addition, all distributions under the Plan shall be net of the actual and reasonable costs of making such distributions.

Section 8.06 **Exemption from Certain Transfer Taxes**. Pursuant to Section 1146(c) of the Bankruptcy Code: (a) the issuance, transfer or exchange of any securities, instruments or documents; (b) the creation or release of any other Lien, mortgage, deed of trust or other security interest; or (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of or in connection with the Plan or the sale of any assets of the Estates, any deeds, releases, bills of sale or assignments executed in connection with or pursuant to the Plan, the Confirmation Order or the Exit Facility approved pursuant to the Plan, shall not be subject to any stamp tax, transfer tax, intangible tax, recording fee, or similar tax, charge or expense to the fullest extent provided for under Section 1146(a) of the Bankruptcy Code.

## ARTICLE IX

## EXECUTORY CONTRACTS AND LEASES

Section 9.01 **Assumption of Contracts and Leases**. Unless otherwise elected by Debtors prior to the Effective Date by notice to the non-Debtor party or parties to such executory contract or unexpired lease, each executory contract or unexpired lease of the Debtors that has not expired by its own terms prior to the Effective Date, and that has not been assumed or rejected during the Chapter 11 Cases prior to the Effective Date, shall be deemed assumed pursuant to Bankruptcy Code Section 365 as of the Effective Date.

Section 9.02 **Bar Date For Rejection Damages.** If the rejection of any executory contract or unexpired lease under the Plan gives rise to a Claim by the non-Debtor party or parties to such contract or lease, such Claim, to the extent that it is timely filed and is an Allowed Claim, shall be classified in Class 4; provided, however, that the Unsecured Claim, if any, arising from such rejection shall be forever barred and shall not be enforceable against the Debtors unless a proof of such Claim is filed and served on the Debtors within thirty (30) days after the

date of notice of the entry of the order of the Bankruptcy Court rejecting the executory contract or unexpired lease, which may include, if applicable, the Confirmation Order.

**ARTICLE X**

**DISPUTED, CONTINGENT AND
UNLIQUIDATED CLAIMS AND INTERESTS**

Section 10.01 **Objections to Other Claims and Interests**.

(a) The Claims/Interest Objection Deadline shall be six (6) months after the Effective Date; provided, however, that the last date for filing Avoidance Actions against a holder of a Claim or Interest shall be the date established by Bankruptcy Code Section 546(a) and the last day for asserting any other Estate Cause of Action shall be the last day of the applicable statute of limitations therefor provided under applicable non-bankruptcy law, as such period may have been extended by Bankruptcy Code Section 108 or any other section of the Bankruptcy Code or other applicable law. Notwithstanding any of the foregoing, the Debtors may request from the Bankruptcy Court one or more extensions of the Claims/Interest Objection Deadline, which extended date shall become the new Claims/Interest Objection Deadline.

(b) Objections to Claims or Interests shall not be subject to any defense, including, without limitation, res judicata, estoppel or any other defense because of the confirmation of the Plan. Additionally, the rights of the Debtors to amend, modify or supplement any objection to a particular Claim or Interest to include relief pursuant to Bankruptcy Code Section 502(d) are hereby preserved until sixty (60) days after the entry of a Final Order against a holder of such Claim or Interest.

**ARTICLE XI**

**EFFECTS OF CONFIRMATION**

Section 11.01 **Retention of Estate Causes of Action/Reservation of Rights**. Except as expressly provided for in the Plan or the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to (i) be res judicata or the basis for estoppel of, (ii) create any other defense to the prosecution to judgment on the merits of, (iii) be a waiver of or (iv) be a relinquishment of any Estate Causes of Action, including Avoidance Actions, that are not expressly released under the Plan.

Section 11.02 **Direct Causes of Action**. Nothing in the Plan is intended to, nor shall be interpreted as, impairing, waiving or otherwise affecting in any way Causes of Action that do not belong to the Estates, including assessments of damages.

Section 11.03 **Compromise of Controversies**. Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted,

by or against the Debtors, arising out of, relating to or in connection with the business or affairs of or transactions with the Debtors. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, creditors and other parties-in-interest, and are fair, equitable and within the range of reasonableness. The provisions of the Plan, including, without limitation, its injunction, exculpation and compromise provisions, are mutually dependent and non-severable.

Section 11.04 **Preservation of Insurance**. Except as necessary to be consistent with the Plan, the Plan shall not diminish or impair the enforceability of insurance policies that may cover Claims against the Debtors, the Estates, or Assets or any other Person or Entity.

Section 11.05 **Term of Injunctions or Stays**. Until the Effective Date, all injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code Sections 105(a) or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect. After the Effective Date, all injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code Sections 105(a) or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect to the extent provided for herein and in the Confirmation Order.

Section 11.06 **Exculpation**. None of the Debtors, nor any member, director, officer, partner, employee, agent, professional, or representative thereof (but solely in their capacity as such), shall have or incur any liability, in any form, to the Estates or, to the extent set forth in Bankruptcy Code Section 1125(e), any other Entity or Person, for any act or omission in connection with or arising out of their involvement in the preparation or filing of the Disclosure Statement or the Plan, or the conduct of the Chapter 11 Cases, including the type or value of distributions, if any, reserved under the Plan for holders of Claims or Interests, the solicitation of votes for acceptance or rejection of the Plan, the pursuit of confirmation and consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, except for fraud, willful misconduct or gross negligence and, with respect to gross negligence, shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and applicable law.

Section 11.07 **Injunction**. *Confirmation of this Plan shall have the effect of, among other things, permanently enjoining all Entities or Persons that have held, hold or may hold or have asserted, assert or may assert Claims against or Interests in the Estates with respect to any such Claim or Interest, from taking any of the following actions (other than actions to enforce any rights or obligations under the Plan): (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Estates or any of their property; (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Estates or the Debtors or any of their property; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Estates or the Debtors or any of their property; (d) asserting any right of setoff, directly or indirectly,*

*against any obligation due the Estates or the Debtors or any of their property, except as contemplated or allowed by the Plan; and (e) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan including without limitation any action or proceeding against Borrowers, the Secured Lenders or any of them, that is inconsistent with the modifications to the Pre-Petition Credit Agreement approved pursuant to this Plan as summarized in Section 13.07 of the Plan. In consideration of (x) the substantial contribution to the Plan made and to be made by Borrowers, including the non-Debtor Borrowers, through the delivery and grant of liens and mortgages on property of the non-Debtor Borrowers, (y) the agreement of the non-Debtor Borrowers to release claims against the Administrative Agent and Secured Lenders as set forth in Section 11.08 of this Plan, and (z) the agreement of the non-Debtor Borrowers to not demand or require repayment of inter-company receivables from Debtors, the injunction provided for in this Section 11.07 shall extend to and apply to all claims of Secured Lenders against non-Debtor Borrowers, and all Secured Lenders shall be precluded from taking any of the foregoing actions against the non-Debtor Borrowers except as to obligations of the Debtors and non-Debtor Borrowers under this Plan and agreements approved pursuant to this Plan.*

Section 11.08 **Release of Lenders**. In consideration of, *inter alia*, Administrative Agent's and Lenders' acceptance of the Plan, Debtors will agree, as of the Effective Date, and will cause all non-Debtor Borrowers to agree, as of the Effective Date, not to sue upon or prosecute, and to release and discharge Administrative Agent and each Secured Lender from, any and all claims and causes of action, in tort or contract or of any other kind or character, whether known or unknown and whether then existing or thereafter arising, that have at any time been owned, or that are thereafter owned, that arise out of any one or more circumstances or events that occurred prior to the Effective Date, including without limitation, any usury claims, or any remedy available under the Loan Documents or otherwise. Moreover, as of the Effective Date, Borrowers waive any and all claims then or thereafter arising from or related to any delay by Administrative Agent or any Secured Lender in exercising any rights or remedies under the Loan Documents or available at law or equity, including, without limitation, any delay in foreclosing any collateral securing any of the Notes. Borrowers expressly acknowledge and agree that the release of Administrative Agent and the Secured Lenders shall not be construed as an admission of wrongdoing, liability or culpability on the part of Administrative Agent or any Secured Lender, or as an admission by Administrative Agent or any Secured Lender of the existence of any claims of any Borrower against Administrative Agent or any Secured Lender. Borrowers further acknowledge that, to the extent that any such claims may exist, they are speculative and not liquidated. In any event, Borrowers acknowledge and agree that the value to Borrowers of Administrative Agent and the Secured Lenders' covenants and agreements under the Modification is in excess of, and constitutes more than, "reasonably equivalent value" for any and all claims and liabilities released by Borrowers. For purposes of this <u>Section</u>, "Administrative Agent" and "Secured Lender" shall mean Administrative Agent, any Secured Lender and their affiliates, subsidiaries and "controlling persons" (within the meaning of the federal securities laws), and their respective successors and assigns and each of the respective shareholders, directors, officers, agents, servants, employees, attorneys, financial advisors, branches, affiliates, subsidiaries, predecessors, successors and assigns and all person, firms, corporations, and other representatives and organizations acting on any of their behalves in their capacities as such.

**ARTICLE XII**

**RETENTION OF JURISDICTION**

Section 12.01 **Retention of Exclusive Jurisdiction by the Bankruptcy Court**. Notwithstanding confirmation of the Plan or occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Cases and the Plan to the fullest extent legally permissible, including, without limitation, for the following purposes:

(a)    to the extent not otherwise determined by the Plan, to (i) determine the allowance, classification, or priority of Claims upon objection by any Entity or Person entitled to file an objection, or (ii) the validity, extent, priority and nonavoidability of consensual and nonconsensual Liens and other encumbrances against Assets, Estate Causes of Action, or property of the Estates;

(b)    to issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Entity or Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Chapter 11 Cases on or before the Effective Date with respect to any Entity or Person;

(c)    to protect the Assets or property of the Estates, including Estate Causes of Action, from claims against, or interference with, such Assets or property, including actions to quiet or otherwise clear title to such property or to resolve any dispute concerning Liens, security interests or encumbrances on any Assets of the Estates;

(d)    to determine any and all applications for allowance of Fee Claims;

(e)    to determine any Priority Tax Claims, Priority Non-Tax Claims, Administrative Claims or any other request for payment of Claims, including both fees and expenses, entitled to priority under Bankruptcy Code Section 507(a) of the Bankruptcy Code;

(f)    to resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan and the making of distributions hereunder;

(g)    to determine any and all motions related to the rejection, assumption or assignment of executory contracts or unexpired leases, or to determine any motion to reject an executory contract or unexpired lease pursuant to Article IX of the Plan;

(h)    except as otherwise provided herein, to determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted in and prior to the closing of the Chapter 11 Cases, including any remands;

(i)    to enter a Final Order closing the Chapter 11 Cases;

(j)     to modify the Plan under Bankruptcy Code Section 1127, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purposes;

(k)     to issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Entity or Person, to the full extent authorized by the Bankruptcy Code;

(l)     to determine any tax liability pursuant to Bankruptcy Code Section 505;

(m)     to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(n)     to resolve any disputes concerning whether an Entity or Person had sufficient notice of the Chapter 11 Cases, the applicable Claims bar date, the hearing to consider approval of the Disclosure Statement or the Confirmation Hearing or for any other purpose;

(o)     to resolve any dispute or matter arising under or in connection with any order of the Bankruptcy Court entered in the Chapter 11 Cases;

(p)     to resolve any disputes concerning any injunction, exculpation or other waiver or protection provided in the Plan;

(q)     to approve, if necessary, any distributions, or objections thereto, under the Plan; and

(r)     to determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

Section 13.01  **Amendments**.

(a)     **Pre-Confirmation Amendments**.  The Debtors may modify the Plan at any time prior to the entry of the Confirmation Order, provided that the Plan, as modified, and the Disclosure Statement pertaining thereto meet applicable Bankruptcy Code requirements.

(b)     **Postconfirmation/Preconsummation Amendment Not Requiring Resolicitation**.  After the entry of the Confirmation Order and before substantial consummation of the Plan, the Debtors may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that: (i) the Debtors obtain approval of the Bankruptcy Court for such modification, after notice and a hearing; and (ii) such modification shall not materially and adversely affect the interests, rights, treatment or distributions of any Class of Allowed Claims or Interests under the Plan.

(c)    **Postconfirmation/Preconsummation Amendment Requiring Resolicitation**. After the Confirmation Date and before substantial consummation of the Plan, the Debtors may modify the Plan in a way that materially or adversely affects the interests, rights, treatment, or distributions of a Class of Claims or Interests, provided that: (i) the Plan, as modified, meets applicable Bankruptcy Code requirements; (ii) the Debtors obtain Bankruptcy Court approval for such modification, after notice and a hearing; (iii) the Plan as modified complies with the Bankruptcy Code and Bankruptcy Rules; and (iv) the Debtors comply with Bankruptcy Code Section 1125 with respect to the Plan as modified.

Section 13.02 **Subrogation**.    Nothing herein shall otherwise affect any rights that parties-in-interest may have to the subrogation of Claims, from any source.

Section 13.03 **Severability**.  If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision and make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

Section 13.04 **Successors and Assigns**.  The rights, benefits and obligations of any Entity or Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Entity or Person.

Section 13.05 **Governing Law**.  Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other federal laws are applicable, and subject to the provisions of any contract, instrument, release, or other agreement or document entered into in connection with the Plan, the construction, implementation and enforcement of the Plan and all rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Pennsylvania, without giving effect to conflicts of law principles which would apply the law of a jurisdiction other than the Commonwealth of Pennsylvania.

Section 13.06 **Effectuating Documents and Further Transactions**.  The Debtors shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, and other agreements and take such other actions as may be reasonably necessary to effectuate and further evidence the terms and conditions of the Plan.

Section 13.07 **Amendments and Supplement to Pre-Petition Credit Agreement.** Conditioned upon acceptance of the Plan by the Lenders in the requisite number and amount required by the Bankruptcy Code and provided a majority in number and 75% in amount due of the Lenders elect Option (B) under Section 5.01(c) and subject to confirmation of the Plan, the Pre-Petition Credit Agreement shall be deemed amended, supplemented and modified as of the

Effective Date in a manner consistent with the Plan and that Term Sheet dated June 30, 2011, including as follows:

(A)     **Secured Lenders' Pre-Petition Claims**.

      (1)     Interest at the non-default rate under the Pre-Petition Credit Agreement will be paid monthly on the Allowed Amount of the Secured Lenders Pre-Petition claims (principal, accrued but unpaid interest and unpaid fees and expenses as of the Petition Date less the Offset Amount);

      (2)     Secured Lenders will receive their pro rata share of the net proceeds of sales of collateral mortgaged as of the Petition Date based on the value of the collateral as of the Effective Date and based on each Secured Lender's pro rata percentage in effect as of the Petition Date;

      (3)     All unpaid principal, accrued but unpaid interest and unpaid fees accruing after the Effective Date will be due and payable at maturity, which shall be the earlier of (i) 36 months after confirmation of the Plan; or (ii) September 30, 2014;

      (4)     "Event of Default" shall be defined as a failure of Borrowers to make any payment required to be made with respect to the Allowed Secured Lender Claims or a default under the Exit Facility;

      (5)     All Secured Lenders will receive all financial reports and information provided by Borrowers pursuant to the terms of the Exit Facility; and

      (6)     Since the Allowed Amount of the Secured Lenders' claims will not be subject to re-borrowing, all provisions relating to additional loans, letters of credit, covenants, events of default, financial reporting and payment of fees and expenses will be superseded by the provisions set forth in the above subparagraphs and no longer be effective.

(B)     **The Exit Facility Providing For Revolving Credit Borrowing From Those Lenders Electing Option (B) Under Section 5.01(c)**.

      (1)     the Commitment amount for the Exit Facility shall be reduced from $210,000,000 to the lesser of (a) $128,000,000 subject to further reduction as set forth in the Exit Facility Agreement; and (b) a revised loan-to-value borrowing base based on current appraisals;

      (2)     the pro rata participations of Secured Lenders electing Option (B) under Section 5.01(c) shall be adjusted upwards to proportionately encompass the pro rata percentage of Secured Lenders electing Option (A) under Section 5.01(c);

      (3)     the modified Commitment amount under the Exit Facility shall be reduced by $3 million at the beginning of each calendar quarter starting January 1, 2012;

(4)     the Maturity Date shall be the earlier of (i) 36 months after confirmation of the Plan; or (ii) September 30, 2014;

(5)     Section 2.07(b) of the Pre-Petition Credit Agreement shall be modified to delete the existing curtailment requirement;

(6)     Letter of Credit sublimits, collateralization requirements, availability usage and fees shall be modified as set forth in the Term Sheet;

(7)     Financial covenants, reporting requirements, and advance rates shall be modified as set forth in the Term Sheet; and

(8)     Interest rates and fees on Exit Facility advances shall be as set forth in the Term Sheet.


Section 13.08  **Effectiveness of Amendments to Pre-Petition Credit Agreement**.  If the Plan is confirmed and Lenders in the required number and amount elect Option B under Section 5.01(c): (i) the Pre-Petition Credit Agreement shall be deemed amended, supplemented and modified in a manner consistent with the terms of the Plan and the Term Sheet dated June 30, 2011 as summarized in Section 13.07; and (ii) any Default or Event of Default (as such terms are defined in the Pre-Petition Credit Agreement) shall be deemed waived to the extent such Default or Event of Default is inconsistent with the terms of the Plan.  For the avoidance of doubt, such affirmative vote by Requisite Lenders shall be deemed an amendment to the Pre-Petition Credit Agreement, and any Default or Event of Default arising therefrom shall be deemed waived.  For the avoidance of doubt, the provisions of this Section 13.07 are conditioned and shall be effective only upon the occurrence of the Effective Date.

Section 13.09  **Confirmation Order and Plan Control**.  To the extent the Confirmation Order and/or this Plan is inconsistent with the Disclosure Statement, or any other agreement, the Plan controls the Disclosure Statement and any such agreements, and the Confirmation Order controls the Plan, the Disclosure Statement and any such agreements.

Section 13.10  **Payment of Statutory Fees**.  All fees payable pursuant to section 1930 of title 28 of the United States Code as Administrative Claims under the Plan, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid in Cash on the Effective Date, or as soon as reasonably practicable thereafter, and the Debtors shall thereafter be liable for the payment of additional fees under Section 1930 of title 28 of the United States Code other than with respect to the consolidated Chapter 11 Case which will continue after the Effective Date.

Section 13.11  **Withdrawal of Plan**.  The Debtors reserve the right, in the exercise of their reasonable discretion, to revoke and withdraw or to modify the Plan at any time prior to the Confirmation Date or, if the Debtors are for any reason unable to consummate the Plan after the Confirmation Date, at any time up to the Effective Date.  If the Debtors revoke or withdraw the Plan, (a) nothing contained in the Plan shall be deemed to constitute a waiver or release of any claims by or against the Estates or to prejudice in any manner the rights of the Estates or any Entity or Person in any further proceeding involving the Debtors and (b) the result shall be the

same as if the Confirmation Order were not entered, the Plan was not filed and the Effective Date did not occur.

Section 13.12  **Payment Dates**.  Whenever any payment to be made under the Plan is due on a day other than a Business Day, such payment will instead be made, without interest, on the next Business Day or as soon thereafter as practicable.

Section 13.13  **Notices**.  Any notice, request or demand given or made under this Plan or under the Bankruptcy Code or the Bankruptcy Rules to the Plan Debtors shall be in writing and shall be hand delivered or sent by a reputable overnight courier service, and shall be deemed given when received at the following addresses whether hand delivered or sent by overnight courier service:

**MANION MCDONOUGH & LUCAS P.C.**
James G. McLean, Esquire
600 Grant Street, Suite 1414
Pittsburgh, PA  15219
(412) 232-0200


# ARTICLE XIV

# CONFIRMATION REQUEST

The Debtors request confirmation of the Plan under Bankruptcy Code Section 1129.

Dated: August 12, 2011