IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>MARONDA HOMES, INC.,<br><br>        Debtor.<br>_____ | Chapter 11<br><br>Case No. 11-22418-JKF<br>(Joint Administration)<br><br>Document No. ___ |
| In re:<br><br>MARONDA HOMES OF OHIO,<br><br>        Debtor.<br>_____ | Chapter 11<br><br>Case No. 11-22422-JKF |
| In re:<br><br>MARONDA HOMES OF CINCINNATI, LLC,<br><br>        Debtor. | Chapter 11<br><br>Case No. 11-22424-JKF<br><br>Related to Doc. Nos. 117, 163<br><br>Hearing Date & Time:<br>**October 28, 2011 at 9:00 a.m.** |

**DEBTORS' RESPONSE TO FIFTH THIRD BANK'S
<u>OBJECTION TO DEBTORS' DISCLOSURE STATEMENT</u>**

Debtors, by and through their undersigned counsel, respond as follows to the Objections filed by Fifth Third Bank ("Fifth Third") on October 14, 2011:

**I.     PRELIMINARY STATEMENT**

Some Chapter 11 Reorganization Plans are cumbersome and complex. The Debtors' Joint Plan is not one of them. Of the more than 1,000 creditors with which the

Debtors do business, only two -- Fifth Third Bank and Huntington National Bank -- have voted against or filed Objections to the Joint Plan of Reorganization ("POR").

Fifth Third holds 4.8% of the total indebtedness owed to the Class of Secured Lenders. Huntington National Bank holds 6.7%. The holders of the remaining 88.5% of the debt (comprising 12 of the 14 Secured Lenders) have voted in favor of the POR. Faced with this stark reality, the two dissenting banks have tried to create convolution out of clarity in an effort to erect impediments to confirmation of the POR on October 28, 2011. Respectfully, these efforts should be rejected. The Debtors will be filing in advance of the Confirmation Hearing a Memorandum of Facts and Law that will demonstrate every requirement for confirmation has been met. On October 28th, a further evidentiary record will be created (requiring no more than a few hours of testimony) that will fully support and justify confirmation.

In light of the Objections filed, however, the Debtors have also prepared this numbered paragraph by numbered paragraph Response.

## II.     RESPONSE TO FIFTH THIRD'S OBJECTIONS

1-3.    The Debtors admit they filed voluntary Chapter 11 petitions on April 18, 2011, that they continue to operate as debtors-in-possession and that they filed and served a Joint Plan of Reorganization ("POR") and accompanying Disclosure Statement on August 12, 2011.

4.     Debtors admit that Fifth Third is one of 14 Lenders participating in a Pre-Petition Revolving Credit Agreement and that Fifth Third's approximate 4.8% portion of the amounts borrowed or utilized for letters of credit by the Debtors and their affiliates is approximately $4,342,000. No interest is due with respect to such claim, however,

because the Debtors have never failed, either Pre-Petition or Post-Petition, to pay all interest currently. The current amount claimed by Fifth Third is the remaining balance of a $25,000,000 lending commitment extended by Fifth Third to the Maronda entities and is evidence of the remarkable performance of Maronda in repaying indebtedness notwithstanding the recession/depression in the homebuilding industry that has existed in the United States since 2007.

5. Maronda admits that the POR places all 14 bank participants in the Revolving Credit Agreement in a single Class, but avers that not only is this appropriate but that there would be no other supportable treatment since all 14 are parties to the same identical Revolving Credit Agreement.

6. Maronda admits that the Class 1 Claims of the Secured Lenders are fully secured <u>providing</u> that the POR is confirmed and that there is no interruption or discontinuance to the Debtors' business operations. The Debtors also aver, however, that on a liquidation basis the Class 1 Secured Lenders are extremely under-secured and that they would suffer a nearly $41 million loss on liquidation; which of course in part explains the overwhelming acceptance of the POR by Class 1.

7. Maronda denies that the POR proposes to pay the Secured Lenders less than the full amount of their claims. To the contrary, the POR expressly provides for full payment of the Secured Lenders' claims but also resolves breach of contract and other claims held by the Debtors and their affiliates <u>against</u> the Secured Lenders; a treatment that has been overwhelmingly accepted by 86.7% in number and 88.5% in amount of all Class 1 Secured Lender claims. For further answer, however, even if the POR simply

offers payment of less than the full amount of the Secured Lenders' claims, that offer has been accepted by Class 1.

8. Debtors admit that the purpose of a Disclosure Statement is to provide "adequate information" in order to allow creditors to make an informed judgment.

9-13. Debtors also admit that the Bankruptcy Court "has much discretion in determining whether a Disclosure Statement provides adequate information and that the decision should be made subjectively on a case by case basis."

14. Debtors admit that a Disclosure Statement should provide creditors affected by a POR with meaningful financial information to enable them to make an informed decision.

15. Debtors deny Fifth Third's allegation that the Disclosure Statement fails to provide adequate information. To the contrary, Debtors' Disclosure Statement, especially when taken together with the 300-400 pages of financial information provided to each of the Secured Lenders on a monthly basis both Pre-Petition and Post-Petition, provides <u>far, far more</u> than is required under the Bankruptcy Code. Fifth Third has been provided not only with the Disclosure Statement but also with the following:

 a. Monthly financial statements consisting of a Balance Sheet, a Profit and Loss Schedule, a Schedule of all material assets and liabilities on an individual basis and a Schedule detailing interest, amortization and depreciation.

 b. A monthly "Borrowing Base" that lists every piece of real property in which the Secured Lenders have a mortgage together with the current appraised value thereof and all costs expended by any Maronda entity for construction or improvement thereof.

4

  c. A monthly report that provides essentially the same information as is contained in the "Borrowing Base" for every other asset of any Maronda entity.

  d. On a quarterly basis, calculations of every financial covenant contained in the Revolving Credit Agreement.

  e. On a quarterly basis, details of all payments of indebtedness.

  f. On a quarterly basis, a report of any liability claims (insured or uninsured) asserted against any Maronda entity.

  g. On a quarterly basis, a report provided on a job by job basis showing the amounts expended and the status of every one of the hundreds of houses then being constructed by both the Debtors and the non-Debtor Maronda entities.

  h. On a quarterly and annual basis, cash flow projections for all Maronda entities.

Fifth Third's allegation that the Disclosure Statement does not state that the POR is "feasible" is incorrect and is further belied by the multiple references in the POR and Disclosure Statement to the fact that the Debtors have obtained, contingent upon confirmation, a three year $128 million Exit Financing Facility that will enable them to meet all of their obligations upon emerging from Chapter 11.

 16. Fifth Third incorrectly alleges that the Debtors' Disclosure Statement fails to list executory contracts that will not be assumed. To the contrary, Debtors' Disclosure Statement states that <u>all</u> executory contracts will be assumed. Thus, Fifth Third's reference to the fact that it is a lessor on an equipment lease, which Debtors admit, is irrelevant since that lease was never in default, remains current and will be assumed.

17-19. Debtors reject Fifth Third's contention that the thousands of pages of financial and operating information it has received since the Petition Date from the Debtors must nonetheless also be attached to the Disclosure Statement. Fifth Third has received mountains of information from the Debtors. Its contention that the Debtors should intentionally damage their competitive position by publicly filing all of this information should be viewed by the Court for what it is -- an effort to threaten further damage against the Debtors as the "price" of their proceeding with their POR.

20-23. Debtors deny that the Disclosure Statement lacks an explanation of how the Secured Lenders who choose not to participate in the Exit Financing Facility will be treated; to wit, they will be treated exactly the same as the other Secured Lenders who also were given the option to be paid less or to become Exit Lenders. Debtors also deny that the Secured Lenders have insufficient information to value the Debtors' assets and to judge the risks of participating in the Exit Financing Facility. First of all, Fifth Third fails to mention that every single piece of more than 4,000 parcels of real property owned by the Debtors or their non-Debtor affiliates have been independently appraised since the Petition Date <u>by the Secured Lenders themselves</u> and that Fifth Third has access to literally tens of thousands of pages of appraisal reports resulting therefrom. Next, the Debtors believe and have disclosed that participation in the Exit Financing Facility involves credit risk because it requires additional lending, on favorable terms, for a three year period. Fifth Third, of course, knows all of this in intricate detail and has had the benefit of the proposed Post-Petition lending agreement, analyses of the credit risk by expert consultants retained by the Secured Lenders and the opportunity to observe that notwithstanding the additional risk the overwhelming majority of Secured

Lenders elected to participate in the Exit Financing Facility because, to state the obvious, they have concluded that a combination of the opportunity to receive a waiver of payment of their portion of the Offset Amount plus the disastrous consequences that would attend any continuation of bankruptcy proceedings and/or a liquidation fully justifies their decisions. Fifth Third was entitled to reach an opposite conclusion, which it has. It is not entitled to thwart the will of the requisite majorities required under the Bankruptcy Code for approval of the POR.

24. The Debtors' statement that sufficient information has not been provided regarding the potential lawsuit that will be released by the Debtors and their non-Debtor affiliates in connection with confirmation of the POR is plainly incorrect. Debtors included a detailed statement of the basis for their claims on the very first day of these Chapter 11 proceedings in the Motion for Emergency Use of Cash Collateral filed by them. In addition, in an August 19, 2011 meeting with counsel for Fifth Third (that occurred within a week of filing of the POR and Disclosure Statement), counsel for the Debtors devoted more than an hour to describing in detail the factual and legal bases for the Debtors' claims as well as the inapplicability of a number of possible defenses proffered by Fifth Third's counsel. Further, the Debtors have detailed their claims at considerable length to the Agent for the Secured Lenders and, on information and belief, the content of Debtors' contentions have been transmitted during multiple "Lender conference calls" held among the Lenders since the Petition Date. In a larger sense, however, none of this matters. Debtors proposed that the Secured Lenders accept a $12 million Offset Amount in their POR; Fifth Third's portion of which would be approximately $574,800. Fifth Third voted against the POR and its proposed imposition

of the Offset Amount, but it was badly outvoted by the great majority of the Class 1 Secured Claims.  Thus, whether or not Fifth Third wants or thinks it needs the proffered release of claims under the Bankruptcy Code the treatment accorded to Class 1 has been overwhelmingly accepted and is binding on the Class.

25-27.  Fifth Third's objection that the POR does not include evidence to support the results of a liquidation is specious.  First, the Disclosure Statement does contain a detailed description of why liquidation will result in a smaller recovery to Fifth Third than will be provided by the Plan even after considering the impact on Fifth Third of its share of the Offset Amount.  Second, "evidence" is what is presented at a hearing before this Court, and at the scheduled Confirmation Hearing the Debtors will provide overwhelming evidence to support the conclusion that the Secured Lenders would receive far less in a liquidation than under the POR.  Finally, Fifth Third's objection that the POR does not contain a schedule for repayment is also specious.  The POR provides that interest will continue to be paid currently and that the Secured Lenders will receive the net proceeds upon the sale of every piece of property in which the Secured Lenders held a Pre-Petition lien when and as such property is sold.  When such property is sold is a function of the marketplace.  All that Debtors can do, and all that these Debtors have promised or are required to do, is to market the property effectively and to repay (through refinancing or other means) any remaining balance due to the Secured Lenders at the maturity date of September 30, 2014 set forth in the POR.

WHEREFORE, the Debtors request that the Court overrule Fifth Third's Objections and, upon the evidence to be presented at the Confirmation Hearing, confirm the Debtors' Joint Plan of Reorganization.

Respectfully submitted:

*/s/ Joseph F. McDonough*
Joseph F. McDonough, Esquire
Pa. I.D. #19853
Manion McDonough & Lucas, P.C.
600 Grant Street, Suite 1414
Pittsburgh, PA 15219
*412-232-0200*

October 21, 2011　　　*Counsel for the Debtors*